BRADFORD *v.* HALL *et ux.*

SAME *v.* TURNER.

*(Circuit Court, S. D. Mississippi, E. D.* November 20, 1888.)

1. **PUBLIC LANDS—SWAMP LANDS—TITLE FROM STATE.**

By act Miss. March 12, 1852, the swamp lands theretofore granted the state by congress were transferred to a board of commissioners to sell, and cause certificates of purchase to issue to the purchaser thereof. Upon presentation of these certificates, the secretary of state was authorized to issue a patent. By act April 2, 1871, a corporation was created as the successor to the commissioners, and vested with their rights, properties, etc., and upon filing a bond the corporation was to receive a patent for the lands, except lands theretofore sold to legal purchasers. *Held,* that a purchaser from the board of commissioners, who had paid the price, and received a certificate, before the passage of the act of April 2, 1871, acquired the equitable title, which was sufficient as against purchasers from the corporation.

2. **SAME—CURATIVE ACTS.**

By the act of 1871 the execution of a valid bond was made a condition precedent to the vesting of the title in the corporation. The bond having been declared invalid, an act was passed reciting that, as under the patent to the corporation the land had been assessed for taxation, and taxes paid, the corporation should have the right to purchase lands patented by it, upon paying into the state treasury, within a certain time, a certain sum per acre. *Held* that, as no payment by the corporation had been made for the lands in controversy, the curative act was inoperative as to them.

3. **SAME—BONA FIDE PURCHASERS—CONSTRUCTIVE NOTICE.**

The purchasers from the corporation were chargeable with notice of the recitals in the act creating it and authorizing the transfer of the lands, as well also the failure of the corporation to comply with the terms of the act.

4. **SAME—CERTIFICATE OF PURCHASE—REGISTRATION.**

The registry laws of the state have no bearing upon complainant's title, as the certificates were not required to be registered as notice to the world of their existence.

5. **SAME—TAX TITLE—EVIDENCE.**

Tax deeds from the state auditor are insufficient to show title in the grantee, where there is no evidence of the tax sales, and report of the tax collector, by which title to the land vested in the state.

6. **SAME—VOID PATENTS—RIGHTS OF PURCHASERS—TAXES.**

The purchasers from the corporation are entitled to have refunded money expended by them in good faith in the payment of taxes and for the purchase of the tax title of the state, and it is immaterial that the complainant applied to the assessor to have the lands taxed in his name, and to the tax collector to pay the taxes, and was refused.

In Equity. Bill to quiet title.

Actions by J. J. Bradford against Israel Hall and wife, and one against Margaret P. Turner, to quiet title to certain swamp lands in the state of Mississippi.

*W. P. & J. B. Harris,* for complainant.

*E. E. Baldwin* and *Russell & Boone,* for defendants.

HILL, J. These two causes are submitted together upon bills, cross-bills, answers, exhibits, and proofs, from which the following facts appear: By an act of the congress of the United States, approved 28th September, 1850, the title to the lands described in the bills, together with many other lands known as "swamp lands," in this state, was vested

v.36F.no.13—51

in this state, to be used or sold, and the proceeds used in reclaiming said lands, and for other purposes. To carry into effect the object of this donation by congress, the legislature passed an act, approved on the 12th day of March, 1852, creating a board of commissioners for the Pearl river swamp lands, in which the lands in controversy are situated, and by said act the swamp lands in said district, including the lands in controversy, were transferred and granted to said commissioners, and gave power to said board to sell and dispose of any of the lands so transferred and conveyed, for the purposes stated, and to order and cause certificates to issue to the purchaser or grantee of these lands, specifying the number of acres that the purchaser may be entitled to, and the number of the section and subdivisions of sections transferred, and the township and range in which situated. That, upon the presentation of the certificate of the treasurer of said board of commissioners, the secretary of state should issue a patent to the lands described in the certificate, in the same manner as patents are required to issue for the improvement lands. This act was amended by an act approved November 21, 1865, which, among other things, provided that after the 1st of January, 1866, the minimum price of said lands then unsold should be 12½ cents per acre, each. On the 29th day of March, 1871, the complainant, jointly with J. J. Seal, now deceased, purchased from Hiram Bonner, the then treasurer of said board, the lands in controversy, at the rate of 12½ cents per acre, and received from said Bonner, as such treasurer, certificates for the same, in compliance with said act.

The legislature passed an act which became a law and was in force on the 2d day of April, 1871, without the approval of the governor, incorporating the Pearl River Improvement & Navigation Company, and for other purposes. This act declared the said company to be the successor of the said board of commissioners, with power and authority to carry out the powers and duties of said board according to the act of March 12, 1852, and vested the company with all the rights, properties, claims, and demands, real, personal, and mixed, belonging to said board, or under their control. The third section of the act has this provision:

"That said company shall within sixty days after the passage of this act file in the office of the secretary of state, a bond in the sum of fifty thousand dollars, with two or more good securities, who shall make oath that they are worth the penalty of the bond, over and above all liabilities and exemptions, which securities shall reside in this state, to be approved by the governor; and upon the approval and filing of said bond said secretary shall from time to time, as demanded by said company, make out a patent or patents to said company, which patents shall vest the title in fee-simple in said company: provided nothing in this section shall be so construed as to require patents to issue for any land heretofore sold to legal purchasers; provided further, that no lands shall be disposed of or sold for a less sum than twenty-five cents per acre."

On the 11th day of June, 1871, and on the 27th day of June, 1871, patents were issued, signed by the governor and secretary of state, under the seal of the state, conveying, among many other lands, the lands in

controversy to the Pearl River Navigation Company; and on the 21st day of November, 1872, a deed, or what purports to be such, was executed by Samuel A. Vose, as the president of said navigation company, for all of said lands described in the two patents aforesaid, to M. S. Baldwin, for the recited consideration of $11,000. On the 29th day of November, 1872, the navigation company, by Vose as president, executed another deed to Baldwin for lands described therein for the recited consideration of $10,000, but stated to be to correct certain descriptions of the lands intended to be conveyed in the deed of November 21, 1872. On the 17th of April, 1873, Baldwin, by Vose, as his attorney in fact, executed a deed of conveyance to defendant Israel Hall, for the lands described in the bill against Hall's wife, and in the cross-bill, for the recited consideration of $40,000, but which was paid in other lands and real estate situate in several of the northern states; and on the 5th day of November, 1874, Israel Hall executed a deed of conveyance to a one-half interest in the land to his wife and co-defendant. On the 15th day of December, 1873, Baldwin executed a deed of conveyance to the lands described in complainant's bill against Mrs. Turner, and in her cross-bill, to Charles H. Shepard, for the recited consideration of $53,804.61, with other lands. Shepard gave his notes for part of the purchase money, one of which was purchased by Mrs. Turner. Shepard, to secure the note, executed a mortgage, which, with the note, was transferred to Mrs. Turner, who filed her bill in this court to foreclose the mortgage, obtained a decree for the amount due; which, not being paid as required by the decree, in pursuance to the decree the land was sold, when she became the purchaser, and obtained a deed therefor from the commissioner, all of which was confirmed by the court. The proof shows that neither Mrs. Turner, nor her husband, who acted for her, knew of any defect in the title under which she claims. The same is true of the testimony regarding Hall and wife. Both parties continued to pay the taxes on the lands claimed by them respectively, up to this present time. On the 20th day of July, 1881, patents were issued by the governor and secretary of state, under the seal of the state, to complainant and J. J. Seal to the lands described in the bills and cross-bills in these cases, under the certificates of purchase so executed by Hiram Bonner. On the 19th of April, 1873, the legislature passed an act declaring that the purpose of the act of 1871, incorporating the Pearl River Navigation Company, had failed, but that, as the patent to the lands before then made to the company had subjected them to taxation, which taxes had been paid, that, upon the payment into the treasury of the state of 25 cents per acre of all the lands that had been patented, the secretary of state should cancel and deliver up the bond or undertaking that had been filed in his office, intended to be the bond required by the act of incorporation to be executed, appoved, and filed; that the purchase money so directed to be paid should be paid on or before the 1st day of October, 1873; and that, unless payment was made as provided in the act, that the title to the land should rest absolute in the state; and that the patents issued should be deposited with the secretary of state. This act also provided that if any of the lands patented to the company had

been sold by the board of commissioners and had been paid for in good faith, and received a certificate of purchase, but had failed to present the certificate, and obtained a patent, the company, upon proof of the fact, and by the affidavit of the payment, should execute a quitclaim deed to the applicant to said lands, relinquishing all right, title, claim, and interest to such lands; that the applicant should make the application for the deed within six months from the date of the act, and, if not done within that time, the title to the land should become complete in the company; that for all lands so deeded the company should receive a credit at the rate of 25 cents per acre. The act further provides that all acts and parts of acts, deeds, and proceedings whatever of the Pearl River Improvement & Navigation Company be and the same are hereby legalized, ratified, and confirmed. An act of the legislature was passed and approved on the 1st day of February, 1877, appointing a commissioner of swamp lands in this state, and directing that the secretary of state should give notice in the official journal for four weeks to all persons who had theretofore entered or purchased any of the state lands, and had not received patents from the state for the same, to come forward and procure the same by paying the purchase money, and, in case the purchase money had been paid in good faith, to exhibit the receipt therefor, or satisfactory proof that the same had been mislaid, lost, or destroyed, and on satisfactory proof of such payment the secretary should issue patents therefor, and should cancel any patents that had been improperly issued for said land. The legislature passed another act, approved on the same day, which, among other things, provides that the secretary of state, under the directions of the governor, should issue patents for land heretofore sold by and under any authority of law to persons presenting the proper certificates, or upon satisfactory proof of the loss thereof. An act was passed by the legislature, approved March 6, 1882, amending the act of 1877, directing the commissioner of the state to cancel upon his records the last entry made, and certify the same to the secretary of state, who is directed to cancel the last patent; and provision is made in said act for the refunding the money to the party, making the entry canceled.

The original bill was filed in the chancery court of Marion county, as to the lands claimed by Hall and wife, and that against Mrs. Turner in the chancery court of Hancock county, as to the lands claimed by her, both under the provisions of section 1839 of the Code of 1880, and both were removed to this court. In both it is averred that the complainant is the owner in fee-simple of the lands described as set off to him under the decree of the chancery court of Hancock county, and of four-fifths of that set off to the heirs of J. J. Seal, under conveyances from them; that the claims set up to the lands respectively by Hall and wife and Mrs. Turner, are clouds upon his title; and prays that the same be remanded by decree of the court, and that they be declared void, and canceled. The cross-bills make the same averments as to the title of the complainants in the cross-bills respectively, and the same allegations as to the defective title of Bradford, and that his claim is a cloud upon their

title, and prays that the same be declared void, and canceled. The answer and cross-bill of Hall and wife allege that the claim of Bradford was a fraud from the beginning; that no money was paid when the entries were made, or since; that there was no compliance with the statutes authorizing the entries and procurements of the patents; that complainant and Seal were barred of all right and claim thereto by the act of 1873; and other allegations; and, relying upon their being purchasers for value without notice of any defect in the titles under which they claim, they also rely upon the statute of limitations of 10 years. The same reliance upon the statute is made by complainant. The allegations in the bills and cross-bills and answers are substantially the same in both cases.

The foregoing statement of facts and allegations in the pleadings, are all that need be stated to an understanding of the questions for decision. It is a well-settled doctrine that under the statute under which these bills and cross-bills are filed, as well as under the general rule, that the complainant must show that he has a valid title to the lands claimed. Under the statute, I take it, a complete equitable title will be sufficient, so that the first question to be decided is, has complainant shown a sufficient legal or equitable title to the lands described in the bill, and superior to that of the defendant's title? It may be remarked that neither party has shown a title under the statute of limitations for want of sufficient adverse possession. The inception of complainant's title set up is the purchase and entries made on the 29th day of March, 1871. It is alleged in the answers and cross-bills that the entries were not made on that day, but on a subsequent day after the title had passed to the Pearl River Company, and were antedated; and further, that the purchase money was never paid. This allegation is denied, and, such being the case, the burden was on defendants to establish it by proof. This, in my opinion, they have failed to do. Upon the contrary, the proof is that they were made on that day, and there being no question that Hiram Bonner was the treasurer of the board of commissioners, and authorized to sell the lands, and to receive and receipt for the purchase money, and that he was only authorized to make the entries and give the certificates upon the payment of the purchase money. The certificates state that Bradford and Seal did make the purchases, and the price at which made, which could not have been done without the payment of the purchase money. Besides Bradford testifies that Bonner stated when the entries were made that he had received the purchase money from Seal; that Seal was making payments while he was attending to the issuance of the certificates; and there is no proof to the contrary. The proof shows that Bonner and Seal both died before these controversies arose, and that Bradford is the owner of four-fifths of the lands set off to Seal's heirs. I must hold that the purchase money was then paid, and the certificates issued in pursuance to the statute. The act of 1852 transferred these lands from the state to the swamp land commissioners with power to sell and dispose of the same, and it is not controverted that Bonner as the treasurer of the board had authority to sell, and give the certificates of purchase, and that, this being done, Bradford and

Seal thereby became vested with a complete equitable title to the lands so purchased. The patent from the state being the only act necessary to vest in them the complete legal title thereto, there has been no limit of time in which they should be done fixed by law; the only statute on this subject being the act of 1873, and that related to the quitclaim deeds to be executed by the Pearl River Navigation Company. The act of 1871, intended to transfer these swamp lands to the navigation company, excepted from the transfer all lands theretofore sold by the board of commissioners, so that the title to them did not and could not pass to the company. The company was made the successor of the board of swamp land commissioners, and as such was bound by all that the board had done, and took the lands, if they took them at all, with this exception, and was put upon the inquiry as to the sales that had been made. I am satisfied that neither the equitable nor a legal title to the lands in controversy ever passed to the Pearl River Navigation Company. The act of 1871, as a condition precedent to the transfer of the swamp lands in the Pearl river district to the Pearl River Improvement & Navigation Company, provided that the company should execute a bond, with two or more good and sufficient sureties, to be approved by the governor, payable to the state, in the penalty of $50,000, and conditioned for the faithful performance of the obligations upon the part of the company in relation to the trust assumed. These are the substantial conditions required in the bond. The bond so required was to be the bond of the company, executed by its proper officer under the corporate seal of the company, and by which the company would have been bound. This bond never was executed, but what purports to be a bond made by some of the incorporators of the company, dated on the 7th day of April, 1871, was approved by the governor, and filed. This bond the supreme court of this state in the case of Hardy v. Hartman, 4 South. Rep. 545, (decided at last April term,) decided not to be in comformity to the requirement of the act of 1871, and that the bond required was a condition precedent to the transfer of the lands to the said company, and that no title to these lands had passed to the company. This, being a construction of the statute of the state by the supreme court of the state, becomes a part of it, and is binding on this court, in which construction I concur.

But it is contended by defendants' counsel that, whatever defects there might have been in the proceedings, they were cured by the act of 1873. This act declared that the purposes of the act of 1871 had failed, but that, as under the patent to the company the lands had been assessed for taxes, and the taxes paid, that the company should have the right to purchase the lands patented to it, by paying into the state treasury in cash, on or before the 1st of October thereafter, 25 cents per acre, but, if said payment was not made within that time, then the title to all these lands should rest in the state. It also provided that in the event the money was paid, and the title became vested in the company under the patent, and the patent had embraced lands before sold to other persons before the issuance of the patent, that, on proof of the entry and payment of

the purchase money, the company should execute to the purchaser a quitclaim deed, and the company should have a credit for the lands so quitclaimed at the rate of 25 cents per acre, this upon the presumption that the company had paid. But no payment of any money was ever made by the company to the state, so that no title ever vested in the company under this act; and all the confirmations provided in the act became inoperative, so far as it related to these lands, the title to which thereafter rested, as the act terms it, in the state, unless since transferred to others by patent; so that, in my opinion, the act of 1873 in no way conflicts with the rights and title of complainant.

The main defense set up to the original bills and rights set up in the cross-bills is that the defendants in the one and the complainants in the other are innocent purchasers for value, without notice of the defects in the chain of title under which they hold, and of any notice of complainants' title, and are not affected thereby. As to the chain of title under which they claim, they are chargeable with notice of all that goes to make their chain of title, so far as the same appears of record, or facts to which they refer, and upon which they depend, whether they examined them or not. If they did not, they must take the consequences of their neglect. Hall and wife claim under Baldwin's deed. That deed refers to the act of 1871. By reference to that act they would have found that lands theretofore sold were not transferred to the company. They would further have found that the bond was required as a condition precedent to the transfer of the lands to the company, and the place where the bond was to be filed, and could be found; and, if the one purporting to be the one required was not discovered to be sufficient, must be held to take the risk that it was the proper bond, and that the claim of title was complete from the state,—the source of title under which both parties claim. For these reasons I am satisfied that Hall and wife and Mrs. Turner do not occupy the position of innocent purchasers for value without notice of the defect in their own claims of title. The registry laws of the state have no bearing upon the title of complainant under his certificate of purchase; these laws do not require these certificates or patents to be registered as notice to the world of their existence. The patents may be registered, and copies made evidence, and that is all. The bar of six months, provided in the act of 1873, only applied to the company, and, before it expired, the company had forfeited all rights to any of the lands by reason of noncompliance with any of the conditions imposed, and no limitations of the time within which the patents should be applied for as against the state or any one else than the company have been passed by the legislature; and, the patents having been issued to the lands in controversy, I must hold that the plaintiff has shown a good title, equitable and legal, to the lands in controversy, and that the defendants to the original bill and complainants to the cross-bills have failed to establish their title to these lands so as to entitle them to the relief prayed for in the cross-bill.

Mrs. Turner has filed, as evidence in the cause, deeds from the auditor, but has failed to show the tax sales and report of the tax collector by

which the title to the lands under the sales was vested in the state, and
without which the auditor's conveyance, even if the sales were valid,
must fail to show title under them in Mrs. Turner. While the complain-
ants under their cross-bills are not entitled to have their titles declared
valid, and that of Bradford declared void and a cloud upon their titles,
and to have them canceled as prayed for, yet, under the general prayer
in the cross-bills, they are entitled to have the money expended by them
in the payment of taxes, and Mrs. Turner is entitled to have the money
paid by her to the auditor for the purchase of the title of the state re-
funded to her, with interest from the time the same was so paid.   It
makes no difference that Bradford applied to the tax assessor to have the
lands assessed in his name, and that he applied to the tax collector to
pay the taxes, and was refused the right to do so.   The taxes were a
charge upon the lands, and Hall and wife and Mrs. Turner paid them,
believing in good faith that the lands belonged to them.   They are justly
and equitably entitled to have the money, with interest, refunded to them,
and this charge will be a lien on the lands, and, if not paid within 60
days, the clerk of this court, as commissioner, will be directed to sell so
much of the land for which the taxes were paid by the respective parties
as will pay the same with the costs of sale.   The result is that the prayer
of the complainant in the original bill must be granted, and the prayer
of the complainants in the cross-bills, with the exception stated, must be
denied.   The complainant in the original bill will pay one-half the costs
in each case, and the defendants in each case will pay the other half of
the costs respectively.